IN THE
UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION

| | |
|---|---|
| BARBARA COLE,<br>    Plaintiff,<br><br>v.<br><br>TIMBERBROOK REALTY, LLC,<br>    Defendant. | Case No. 1:25-cv-01359-JEH-RLH |

**Order**

Now before the Court is the Plaintiff Barbara Cole's Motion to Remand to Circuit Court (D. 4).¹ For the reasons stated *infra*, the Motion is granted and the matter is hereby REMANDED to the Tenth Judicial Circuit, Peoria County, Illinois, and the Clerk is directed to close the case.

**I**

On August 26, 2025, the Defendant Timberbrook Realty, LLC ("Timberbrook") filed a Notice of Removal from the Tenth Judicial Circuit Court in Peoria County, Illinois, to the United States District Court for the Central District of Illinois, Peoria Division. (D. 1). On September 5, 2025, the Plaintiff filed a Motion to Remand to Circuit Court along with a Memorandum in Support. (D. 4 & 5). On September 19, 2025, the Defendant filed its Response (D. 6) to which the Plaintiff filed a Reply on October 2, 2025. (D. 7). The matter is now fully briefed.

**II**

The Defendant removed this action pursuant to 28 U.S.C. § 1332(a)(1), invoking diversity jurisdiction, and 28 U.S.C. § 1441(a) and § 1446(a), which

---

¹ Citations to the electronic docket are abbreviated as "D. ___ at ECF p. ___."

together govern the procedures and bases for removing civil actions from state court to federal court. (D. 1 at ECF p. 1). The parties do not dispute the propriety of the procedures followed under § 1446(a), but rather the basis for this Court's jurisdiction under § 1332(a)(1). In general, § 1332(a)(1) has two components that must be satisfied to establish jurisdiction. *See* 28 U.S.C. § 1332(a)(1). First, there must be complete diversity. *See Lincoln Prop. Co. v. Roche*, 546 U.S. 81, 613 (2005). In this case, that is met as neither party disputes that the Plaintiff is a citizen of Illinois and the Defendant is a citizen of Michigan. Second, the amount in controversy must exceed $75,000. *See id.* In this case, the Plaintiff disputes whether the $75,000 amount-in-controversy requirement has been satisfied. *See* (D. 5 at ECF p. 1). Therefore, pursuant to 28 U.S.C. § 1447(c), the Plaintiff sought remand. (D. 4 at ECF p. 1).

   The facts alleged in the Complaint are as follows. Plaintiff participated in the Housing Choice Voucher ("HCV") program that is administered by the Department of Housing and Urban Development ("HUD") and the Peoria Housing Authority ("PHA"). (D. 1-3 at ECF p. 2.). Pursuant to the HCV program, "local housing authorities administer federally subsidized housing vouchers to low-income households who use those vouchers to pay rent to private housing owners." *Id.* at ECF p. 2-3. In April of 2025, Plaintiff submitted an application and the Defendant informed Plaintiff that HCV was acceptable. *Id.* at ECF p. 3. The Defendant completed the Request for Tenancy Approval documents submitted by Plaintiff, after which PHA inspected and approved the apartment for Plaintiff's habitation as required by the HCV program. *Id.* Following that, PHA sent the Defendant a Housing Assistance Payment Contract ("HAP") for them to sign so that PHA could pay its portion of the rent to the Defendant as part of the HCV program. *Id.* In reliance on PHA's approval and the Defendant's representation that HCV was acceptable, Plaintiff signed a lease on April 22, 2025, and paid

$948.00 for the security deposit and nine days of April rent. *Id.* at ECF p. 4. On May 1, 2025, Plaintiff paid and the Defendant accepted $285.00 for May rent, and PHA paid and the Defendant accepted $178.00, reflecting its portion of Plaintiff's April rent. *Id.* On June 1, 2025, Plaintiff paid and the Defendant accepted $300.00, reflecting June rent and a $15.00 car port. *Id.* Subsequently, Plaintiff was informed by the Defendant that PHA had not made full payments for the months of May and June. *Id.* Plaintiff then called PHA who informed her that "PHA could not make more payments until Defendant signed the HAP contract." *Id.* Plaintiff was then told on June 6, 2025, it was the "Defendants' policy to not enter into agreements with third parties and therefore Defendant would not be signing the HAP contract." *Id.* Plaintiff alleges that, prior to June 6, she had not been informed of this policy by either the Defendant or its agents or employees and that she had already been living at her home leased by the Defendant for over six weeks. *Id.* The Defendant then issued a "5 Day Notice demanding the full amount of rent owed" and "filed a complaint for an eviction". *Id.* at ECF p. 6.

In response, Plaintiff alleges the Defendant's actions violate the IHRA because, among other things, the IHRA prohibits "discriminating against a person because of that person's source of income" and that the policy of refusing to enter into third party agreements is "pretextual and unlawful under the IHRA because it has the effect of subjecting individuals to discrimination based on their source of income." *Id.* at ECF p. 5. Therefore, on July 23, 2025, the Plaintiff filed a Complaint in state court that includes as the relief sought "revision of Defendant's rental policies and procedures to comply with the" IHRA, that the Defendant sign the HAP and be enjoined "from taking any action to dispossess Plaintiff of her unit based on allegations of non-payment of rent", damages for violating the IHRA, and reasonable costs and attorney fees. (D. 1-3 at ECF p. 6). The Defendant argues that by "aggregating these potential awards and costs, Defendant has shown that

the amount in controversy exceeds $75,000." (D. 6 at ECF p. 5). The Plaintiff contends that the Defendant has not met its burden. (D. 5 at ECF p. 1). For the reasons that follow, the Court agrees with the Plaintiff.

### A

"The amount in controversy is the amount required to satisfy the plaintiff's demands in full . . . on the day the suit was removed". *Oshana v. Coca-Cola Co.*, 472 F.3d 506, 511 (7th Cir. 2006). In this case, because the Defendant is the proponent of jurisdiction, "it has the burden of showing by a preponderance of the evidence facts that suggest the amount-in-controversy requirement is met." *Id.* "Federal courts should interpret the removal statute narrowly, resolving any doubt in favor of the plaintiff's choice of forum in state court." *Schur v. L.A. Weight Loss Ctrs., Inc.*, 577 F.3d 752, 758 (7th Cir. 2009) (citing *Doe v. Allied-Signal, Inc.*, 985 F.2d 908, 911 (7th Cir. 1993). When the Plaintiff "provides little information about the value of her claims", a "good-faith estimate of the stakes is acceptable if it is plausible and supported by a preponderance of the evidence." *Oshana*, 472 F.3d at 511. "In a suit for injunctive relief, 'the amount in controversy is measured by the value of the object of the litigation.'" *Macken ex rel. Macken v. Jensen*, 333 F.3d 797, 799 (7th Cir. 2003) (quoting *Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 347 (1977)). In the Seventh Circuit, that means "the object may be valued from either perspective—what the plaintiff stands to gain, or what it would cost the defendant to meet the plaintiff's demand." *Id.* "Once the defendant in a removal case has established the requisite amount in controversy, the plaintiff can defeat jurisdiction only if 'it appears to a legal certainty that the claim is really for less than the jurisdictional amount.'" *Id.* (quoting *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 289 (1938)). "The court applies state law to decide whether more than $75,000 is in controversy." *Sykes v. Cook Inc.*, 72 F.4th 195, 207 (7th Cir. 2023).

### B

4

First, the Defendant points to the fact that the Plaintiff seeks injunctive relief that includes "revision of the Defendant's rental policies and procedures to comply with" the IHRA and that the Defendant sign the HAP contract and be enjoined from "taking any action to dispossess Plaintiff of her unit based on allegations of non-payment of rent." (D. 1 at ECF p. 3-4). The Defendant claims these are "companywide revisions of its policies" which would cause the Defendant to incur costs in the form of "additional obligations to third parties, retraining employees, and developing new compliance protocols." *Id.* at ECF p. 4. To bolster that claim, the Defendant submits the affidavit of the Chief Executive Officer of Timberbrook, attesting "[w]hile a precise figure cannot be calculated, the aggregate cost to Timberbrook to implement company-wide operational changes, enter the requisite third-party agreements, and retrain personnel as demanded by Plaintiff Barbara Cole would exceed $75,000." (D. 1-7 at ECF p. 2). However, as the Plaintiff notes, the affidavit "provides no facts whatsoever to back up this assertion." (D. 7-1 at ECF p. 3). Indeed, as the party responsible for carrying the burden by a preponderance of the evidence, the Defendant's conclusory affidavit does little to tip the scale in its direction. To the contrary, Timberbrook's claim that implementing various policy changes would cost in excess of $75,000 is undercut by the Plaintiff who "sent a Freedom of Information Act request to the Peoria Housing Authority" requesting all HAP contracts involving the Defendant from 2020 to present, and received a response that strongly suggests the Defendant has already entered into at least one HAP contract with another tenant that began in April of 2024. (D. 7-1 at ECF p. 3-4 & D. 7-3 at ECF 1-2).

Second, the Defendant states that the Plaintiff seeks unspecified damages under the IHRA which permits "recovery of actual and punitive damage if a civil rights violation has occurred", (D. 1 at ECF p. 4) (citing 775 ILL. COMP. STAT. § 5/10-102(C)(1)), "which can include compensation for mental anguish and humiliation."

5

(D. 6 at ECF p. 1-2). The Defendant also notes that the Plaintiff has not disclaimed seeking punitive damages. *Id.* In support, the Defendant cites to *Cooper v. Chicago Hous. Auth.*, 2025 WL 1677764, at *1 (N.D. Ill. 2025), for the proposition that the amount in controversy in this case exceeds $75,000 because in that case the claim settled for $525,000.00. (D. 6 at ECF p. 6). However, distinguishably, that case brought claims arising under the Fair Housing Act, the Rehabilitation Act, the Americans with Disabilities Act, and the IHRA, in litigation that spanned more than a year and that asserted injuries that accrued over the course of multiple years. *Id.*; *see also Cooper v. Chicago Hous. Auth.*, 2023 WL 12064002, (N.D. Ill. 2023). Here, the Plaintiff brings one cause of action arising under the IHRA, in a case that has arisen and been litigated for less than three months. (D. 1-3 at ECF p. 4-5 & D. 5 at ECF p. 4). Further, though the Plaintiff has not disclaimed seeking actual and punitive damages, the amount-in-controversy requirement is evaluated at the time of removal, not according to hypothetical damage that may result from the Plaintiff suffering further injury, *Oshana*, 472 F.3d at 511; "as of today, Plaintiff remains housed in the apartment she leases from the Defendant and has not been evicted." (D. 7-1 at ECF p. 2).

Third, the Defendant points to the Plaintiff's demand for attorney's fees and costs, which the Defendant notes is allowed in the Court's discretion. (D. 1 at ECF p. 4) (citing 775 ILL. COMP. STAT. § 5/10-103(C)(2)). True, "[l]egal fees may count toward the amount in controversy if the plaintiff has a right to them 'based on contract, statute, or other legal authority.'" *Webb v. Fin. Indus. Regul. Auth., Inc.*, 889 F.3d 853, 857 (7th Cir. 2018). However, as the Defendant notes, that too is limited to "fees incurred as of the filing date", (D. 6 at ECF p. 8), and the Plaintiff asserts it has incurred less than $10,000 in fees. And, although the Defendant asserts that the Plaintiff offers no evidence to support its fees incurred to date (D. 6 at ECF p. 8), the Plaintiff does proffer that the case "commenced less than three

6

months ago". (D. 5 at ECF p. 4). At any rate, the Plaintiff does not carry the burden in the first instance of establishing the amount in controversy by a preponderance of the evidence, the Defendant does. *See Oshana*, 472 F.3d at 511. To a similar end, the Defendant argues that "providing a defense further counts toward the amount of controversy" but does not claim any amount incurred in fees to date or any basis for evaluating its costs thus far (D. 1 at ECF p. 5); therefore, the Court declines to speculate as to the Defendant's fees as they relate to the amount in controversy.

In sum, while the Defendant has presented some evidence as to the amount-in-controversy requirement, the Court finds that the Defendant has not established by a preponderance of the evidence—that it is more likely than not—that the amount in dispute at the time this case was removed exceeds $75,000. Therefore, the Court concludes that it lacks jurisdiction over the Plaintiff's claim. *See* 28 U.S.C. § 1332(a)(1).

### III

For the reasons stated *supra*, the Plaintiff's Motion to Remand (D. 4) is granted. The case is hereby REMANDED to the Tenth Judicial Circuit, Peoria County, Illinois, and the Clerk is directed to close the case.

*It is so ordered.*

Entered on October 3, 2025

s/Jonathan E. Hawley
U.S. DISTRICT JUDGE